# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00463-CR

**Javiele Jason Frias, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-11-205934, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Javiele Jason Frias of burglary of a habitation under the law of parties. *See* Tex. Penal Code §§ 7.01 (parties to offenses); 30.02 (burglary). The jury found the enhancement paragraphs alleging two previous felony convictions to be true and, pursuant to the habitual-felony-offender provision of the Penal Code, assessed punishment at 75 years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. *See id.* § 12.42(d). In two issues, appellant contends the evidence was legally insufficient to support the verdict and that he received ineffective assistance of counsel during the punishment phase. We will affirm the judgment of conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

A Travis County Grand Jury returned an indictment against appellant for burglary of a habitation. The indictment also included enhancement paragraphs alleging appellant had prior convictions for robbery, burglary of a vehicle, burglary of a habitation, and theft.

At trial the jury heard evidence that on the morning of November 3, 2010, someone broke down the front door of Reynaldo Guerrero's Austin residence, went upstairs, and stole a laptop computer. Guerrero testified that when the burglar entered his house, he left the house through the garage and, when he got outside the house, saw a person standing on the sidewalk by his front door. Guerrero described the person as approximately 5'7", heavy set with short hair, and wearing a dark gray hoodie. When shown a photo array by the police, Guerrero picked appellant out as the person who had been standing outside his door. Although Guerrero apparently told police at the scene that he thought appellant was the person who had kicked in his door, at trial Guerrero testified that the man who entered his house was Ricky Charlez, a relative of his former girlfriend's, and that Charlez had been in Guerrero's house before. Guerrero testified that when he came out of his house during the burglary, he observed appellant standing on the sidewalk. Later, from a neighbor's home, Guerrero saw appellant walking quickly down the street with Charlez, who was running.

Officer Robert Escamilla, an officer with the Austin Police Department (APD) who was dispatched to Guerrero's house, testified that while he was headed to the house the dispatch provided an update that one or two suspects had fled the scene. Escamilla drove to try to intercept the suspects and observed a person he believed was a possible suspect. When Escamilla passed the person, he looked up briefly and then averted his eyes in a manner that Escamilla described as

2

"extremely suspicious." Escamilla continued on in his car, then made a u-turn and decided to make contact with the suspect as soon as another officer was in sight. When the suspect turned as if to go into a house, Escamilla testified that he jumped out of his patrol car with his service weapon unholstered and told the suspect to stop. Rather than stop, the suspect ran through a front yard and between two houses, then climbed over a fence, ignoring Escamilla's second and third orders to stop. According to Escamilla, it is unusual for a person who has done nothing wrong to run from the police. Escamilla testified that he saw the suspect's face at that time and identified him in court as appellant. Escamilla chased appellant but soon lost sight of him when appellant climbed a fence. Escamilla then radioed a description of appellant—Hispanic male, unshaven, wearing a dark hoodie, blue jeans and a ball cap—to the other officers. Escamilla testified that the burglary suspects had earlier been described on the police radio as one wearing a dark hoodie and one wearing a gray hoodie. Escamilla testified that appellant was wearing a ball cap and stated that he could not recall whether the radio-transmitted description of the suspects made any mention of either suspect wearing a ball cap.

APD Officer Danny Doyle testified that he was called to the area of the burglary at 9:58 a.m. Doyle heard Escamilla say over the radio that he had seen someone matching the description of the suspects. Doyle watched Escamilla chase appellant and when the suspect evaded Escamilla, Doyle drove to the back side of the houses that appellant had run behind. Doyle testified that appellant "stutter stepped not knowing which way to go." Doyle yelled for appellant to stop, but he ran. Doyle pursued appellant, who jumped over two gates. Doyle then began setting up a perimeter. He testified that the man he chased was wearing an orange sweater and described him

3

as having shaved hair, being short and stocky, and "most likely Hispanic, light-skinned black male." Doyle also testified that after being apprehended, appellant admitted that he was in fact the person who had run from Doyle.

APD Officer John Papp participated in setting up the perimeter to apprehend appellant. Papp was located at a Genie Car Wash, which was a few blocks from Guerrero's house. Papp testified that he found a ball cap near a fence in the area near the car wash. Papp found the cap after one of the car wash employees told him that he saw someone run by and jump the fence. APD Officer Pete Dennis, who was also part of the perimeter, drove his patrol car to the far side of the Genie Car Wash and stayed there. Dennis testified that a witness flagged him down and indicated to him that he had seen a person go over a fence. Dennis looked over the fence and saw someone running through a backyard. Dennis climbed over the fence and pursued the person while yelling at him to stop. The suspect eventually ran to the front porch area of a house south of the car wash, where Dennis and another officer cornered him and took him into custody. At trial Dennis identified appellant as the person he apprehended. Dennis testified that appellant was placed in the back of a patrol car and driven back to Guerrero's house, where Guerrero identified him as the person that kicked his door down.

A Genie Car Wash employee testified that he saw someone jump over a fence near the car wash. He had earlier noticed that there was a lot of police activity in the area and he believed the person that jumped the fence was probably the person the police were looking for. The employee flagged down a police officer and told him about the person jumping the fence. A customer at the car wash testified that he saw someone jump the fence, pursued him, and saw him lying on the

4

ground by a storage shed. According to this witness, the person was wearing a gray sweatshirt. The customer told the police officers where the person was hiding and watched them go and take the person into custody.

After presenting testimony from the officers and witnesses who were in the area on the day of the burglary, the State played for the jury a tape recording of a telephone conversation between appellant and Jessica Fierro recorded in the Travis County jail while he was being detained after his arrest. During the call, appellant states that he did not go in Guerrero's house, but only "took them over there." In the call appellant tells Fierro that he did not know the friends he was with were going to break into the house. Appellant and Fierro also discussed whether his friends had been arrested. Appellant told Fierro that his van was parked near the Genie Car Wash and that there was a gun in the van. Fierro testified that appellant normally drove a van.

An APD crime scene specialist collected a black ski mask and two black gloves that were found by a fence at a house down the street from Guerrero's. DNA analysis done on the gloves indicated that appellant could not be excluded as a contributor. The ski mask had DNA for which neither appellant nor Ricky Charlez could be excluded as contributors.[1]

The jury found appellant guilty as charged. During the punishment phase, appellant pleaded not true to the enhancement paragraphs alleging prior convictions. An investigator from the Travis County District Attorney's office compared appellant's fingerprints to those taken upon

---

[1] The odds of selecting at random a person who could be a contributor to the DNA profile found on the ski mask was found to be one in 2.598 million for Hispanics. The odds of selecting at random a person who could be the source of a major component of the DNA found on one of the gloves was found to be one in 3.675 trillion for Hispanics and for the other glove one in 3.818 billion for Hispanics.

conviction of the prior offenses alleged and identified appellant as the person previously convicted of those offenses. Also during punishment, the State introduced evidence of a home invasion robbery that had occurred less than a week before Guerrero's house was burglarized. This evidence was admitted without objection as evidence of a prior unadjudicated extraneous offense. The jury found the prior convictions alleged in the enhancement paragraphs to be true and assessed punishment at 75 years' imprisonment and a fine of $10,000. The district court sentenced appellant accordingly, and this appeal followed.

## DISCUSSION

### *Sufficiency of the Evidence Supporting Conviction for Burglary of a Habitation*

In his first issue, appellant challenges the sufficiency of the evidence supporting his conviction for burglary of a habitation under the law of parties. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) is only standard to evaluate sufficiency of evidence in criminal case). When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *see also Jackson*, 443 U.S. at 319. The jury is the exclusive judge of the credibility of witnesses and the weight to be given the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* This standard applies to both circumstantial and direct evidence.

A person commits the offense of burglary of a habitation if he "without the effective consent of the owner . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." *See* Tex. Penal Code § 30.02(a)(3). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. *Id.* § 7.01. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02.

Because appellant was not the principal actor here, the State was required to prove conduct constituting an offense plus an act committed by appellant with intent to promote or assist such conduct. *See Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Evidence is sufficient to sustain a conviction under the law of parties if it shows that the accused was physically present at the commission of the offense and encouraged commission of the offense by either words or other agreement. *See Ransom*, 920 S.W.2d at 302; *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978). Because an agreement between the parties to act together in a common design can seldom be proven by words, the State often must rely on the actions of the parties showing an understanding and common design to commit the offense. *Brooks v. State*,

580 S.W.2d 825, 832 (Tex. Crim. App. 1979). Circumstantial evidence may be used to prove the defendant is a party to an offense. *Cordova*, 698 S.W.2d at 111; *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977). Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal conduct. *Cordova*, 698 S.W.2d at 111; *Beier*, 687 S.W.2d at 3-4; *Urtado v. State*, 605 S.W.2d 907, 911 (Tex. Crim. App. 1980).

Mere presence at the scene of the offense does not establish guilt as a party to the offense. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) ("[M]ere presence of a person at the scene of the crime, either before, during, or after the commission of the offense, or even flight from the scene, without more, is insufficient to sustain a conviction of one as a party to the offense."); *Porter v. State*, 634 S.W.2d 846, 849 (Tex. Crim. App. 1982). But presence at the scene is a circumstance tending to prove guilt that, when combined with other facts, may suffice to show that the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979). In this case appellant was not only present at the scene of the burglary,[2] the jury heard evidence that he had driven the person who committed the burglary to the Genie Car Wash in his van, the van was parked near the Genie Car Wash, and appellant was standing outside Guerrero's house while the burglary took place. Later, appellant walked quickly away from the scene in the same direction as the person who had kicked down Guerrero's door. When confronted by police farther down the street, appellant ran from an officer who had an unholstered service weapon and was telling him to stop, and thereafter ran from

---

[2] Appellant does not challenge the sufficiency of the evidence supporting the elements of the offense of burglary of a habitation by another person.

8

at least two other police officers. The evidence showed that appellant was running in the direction of the van he had left parked near the Genie Car Wash, and that he continued to try to evade police officers until he was cornered in a yard. While the jury heard appellant state in the recorded telephone conversation that he did not know his friend was planning to burglarize a house when he gave him a ride, the jury was not required to believe that this self-serving statement by appellant was truthful. Viewing the evidence in the light most favorable to the judgment, as we are required to, it is sufficient to allow a rational jury to find beyond a reasonable doubt that appellant was a party to the offense and sufficient to support the conviction. *See Alexander v. State*, 607 S.W.2d 551, 553 (Tex. Crim. App. 1980) (evidence that defendant drove acquaintances to house and waited while they committed burglary and left with them was sufficient to support conviction of burglary under law of parties). We overrule appellant's first issue.

### Ineffective Assistance of Counsel

In his second issue, appellant contends that he received ineffective assistance of counsel when his trial counsel failed to request notice of the State's intent to introduce, during the punishment phase, evidence of an unadjudicated extraneous offense allegedly committed by appellant and by his counsel's failure to object to the admission of evidence about the offense. Appellant contends that no rational fact finder could have concluded, beyond a reasonable doubt, that he committed the extraneous offense as the State alleged and, consequently, had the evidence been objected to, the trial court would have excluded it. Appellant asserts that if the evidence had been excluded, there is a reasonable probability that the jury would have assessed a less severe punishment than 75 years' imprisonment and a $10,000 fine.

9

To prevail on an ineffective-assistance-of-counsel claim, appellant must prove by a preponderance of the evidence that counsel was ineffective. *Perez v. State*, 310 S.W.3d 890, 892 (Tex. Crim. App. 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). There are two required components of an ineffectiveness claim: performance and prejudice. *Id.* First, appellant must prove that counsel's performance was deficient. *Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 892. To satisfy this prong of the analysis, appellant "must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." *Strickland*, 466 U.S. at 688; *Perez*, 310 S.W.3d at 893. For this performance inquiry we consider all of the circumstances, with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89; *Perez*, 310 S.W.3d at 893.

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To succeed under the prejudice component, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

A *Strickland* claim must be "firmly founded in the record" and the "record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808,

10

813 (Tex. Crim. App. 1999). For this reason, direct appeal is usually an inadequate vehicle for raising ineffective-assistance claims. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record." *Id.* Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Appellant argues that counsel was ineffective by failing to request notice of the State's intent to introduce evidence of unadjudicated extraneous offenses during the punishment phase, failing to request that the trial court hear, outside the presence of the jury, the evidence the State intended to present in order to make a determination of whether a rational factfinder could find beyond a reasonable doubt that appellant had committed the extraneous offense, and failing to object to the evidence when it was introduced by the State.

Article 37.07 of the Texas Code of Criminal Procedure provides:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offenses for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt* by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

11

Tex. Code Crim. Proc. art. 37.07, § 3(a)(1) (emphasis added). Appellant and the State agree that, had appellant's counsel timely requested notice of the prosecution's intent to introduce an extraneous offense during punishment, he would have been entitled to such notice. *See id.* art. 37.07, § 3(g). While counsel for appellant did file a "Motion for Discovery" in which he requested that the court order "[n]otice by the State of its intent to introduce evidence of any other crimes, wrongs, or acts allegedly committed by Defendant, other than those arising in the same transaction for which Defendant is charged in this case," there is nothing in the record to indicate that he obtained a ruling from the trial court on this motion. The motion, addressed to the court, was not sufficient by itself to require notice from the State under article 37.07, section 3(g). *See Rea v. State*, No. 03-11-00186-CR, 2012 WL 3601126, at *2 (Tex. App.—Austin Aug. 12, 2012, no pet.) (mem. op., not designated for publication) (motion for trial court to order State to give notice does not trigger 37.07 duty unless trial court orders State to give such notice); *Ford v. State*, 106 S.W.3d 765, 766-67 (Tex. App.—Texarkana 2003, no pet.) (same). Even reviewing trial counsel's failure to secure the notice to which appellant was entitled with the required deference, we do not believe that any competent attorney adequately representing his client would fail to take the steps required to obligate the State to provide notice regarding the State's intent to introduce evidence of unadjudicated extraneous offenses. *See Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd) (purposefully deciding not to request disclosure by State of intent to introduce evidence of extraneous offense may amount to "questionable trial strategy"); *cf. Ex parte Menchaca*, 854 S.W.2d 128, 129 (Tex. Crim. App. 1993) (no strategic basis for failing to file motion in limine to prohibit introduction of evidence of prior conviction for different offense). "The

12

purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush." *Nance v. State*, 946 S.W.2d 490 (Tex. App.—Fort Worth 1997, pet. ref'd). Thus, the purpose of the notice requirement is to allow the defendant adequate time to prepare for the State's introduction of the evidence at trial. *See Chimney v. State*, 6 S.W.3d 681, 693-94 (Tex. App.—Waco 1999, pet. ref'd). The statute provides a mechanism for a defendant to discover what evidence the State is aware of and whether it intends to offer it to affect his punishment. A defendant is not required to disclose anything to the State when making the request; rather, the request triggers a one-way flow of information from the State to the defendant. We can think of no strategic basis for not requesting notice under article 37.07, section 3(g). We conclude that trial counsel's failure was unreasonable and not justified by any conceivable "trial strategy." *Strickland*, 466 U.S. at 689. Thus, appellant has demonstrated that his trial counsel's representation fell below an objective standard of reasonableness. *Id.*

Appellant also asserts that trial counsel was ineffective when he failed to object to the evidence of the unadjudicated extraneous offense when it was offered by the State. Appellant contends that because the evidence connecting him to the unadjudicated extraneous offense was so weak, his trial counsel should have objected to its admission and, if he had, the trial court would have been obligated to exclude it. *See Mitchell v. State*, 931 S.W.2d 950, 953-54 (Tex. Crim. App. 1996) (trial judge has responsibility of determining threshold admissibility of extraneous offenses in punishment phase). While it is the factfinder's role to determine whether the evidence demonstrates beyond a reasonable doubt that defendant committed the unadjudicated extraneous offense, the trial judge is not permitted to allow the jury to hear evidence of such offenses if the

13

evidence connecting the defendant to the offense is so weak that a rational juror could not make that finding. *See Fischer v. State*, 268 S.W.3d 552, 556-57 (Tex. Crim. App. 2008) (trial court can admit extraneous offense evidence in circumstances where jury could reasonably find beyond reasonable doubt that defendant committed offense); *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994) (proof of culpable connection between accused and extraneous offense is essential precondition to establishing relevance of extraneous offense and conditional fact trial court is required to determine is whether jury could reasonably find beyond reasonable doubt that defendant committed offense). If the evidence is such that a rational trier of fact could find beyond a reasonable doubt that the defendant committed the unadjudicated extraneous offense, evidence of the offense is admissible. Otherwise, it is not. *See Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000) (trial court must make initial determination at proffer of evidence that jury could reasonably find beyond reasonable doubt that defendant committed extraneous offense), *aff'd* 58 S.W.3d 132 (Tex. Crim. App. 2001). Consequently, in order for trial counsel's failure to object to the admissibility of the evidence to be deficient, we must conclude that the evidence was, in fact, inadmissible. *See Ortiz v. State*, 93 S.W.3d 79, 83 (Tex. Crim. App. 2002) ("When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible.").

With this standard in mind, we consider the unadjudicated extraneous-offense evidence introduced by the State. The State called three witnesses who had been the victims of a single-home invasion the week before Guerrero's house was burglarized. Each of the three witnesses testified regarding the events of that evening. In essence, the three witnesses were at home sleeping

when three men broke into their house by breaking the door down. Two of the witnesses testified that one of the invaders knocked on their bedroom door stating they were police and demanding entry. Once inside the bedroom, the invader ordered the witnesses to lie down on the floor. The invader was wearing a black ski mask and gloves and began demanding that the occupants of the home tell him where the safe was and where the drugs and money were. The female witness testified that the invader hit her with the gun several times and that one of the two men that entered the bedroom was touching her and making sexual remarks to her. She testified that one of the men seemed to her to be Hispanic and the other was Caucasian. After awhile the Caucasian male took her to a different room, put her in the closet, and began sexually assaulting her until the Hispanic male told him to stop. The invaders stole some laptops, an iPad, and some bottles of wine. The witness was told by the police that the items that were stolen were later found in an apartment where Richard Charlez lived. After the three witnesses described the home invasion, APD detective Cliff Jaeger testified that he worked the investigations of both the Guerrero burglary and the earlier home invasion. Jaeger testified that Richard Charlez was taken into custody at his apartment, where officers found some iPads, ski masks, gloves, some articles of clothing, and cameras. Another officer testified that Charlez lived at the apartment with a man whose last name is Mendoza.

The State contends that this evidence could justify a finding by the trial court that the jury could reasonably find beyond a reasonable doubt that appellant committed the home invasion such that it was admissible during the punishment phase as evidence of an unadjudicated extraneous offense. The State relies on the following facts: (1) the offenses took place within a week of each other, and both occurred in South Austin; (2) in both instances, the front door was broken down;

15

(3) both offenses involved a gun; (4) the suspects in the earlier home invasion wore black ski masks and gloves that looked similar to the ones found near Guerrero's home; (5) laptop computers were stolen in both instances; (6) stolen items were found in Charlez's apartment; and (7) Charlez's and appellant's DNA were found on a ski mask and gloves recovered from the Guerrero burglary.

We conclude that, based on the evidence presented by the State, no rational juror could reasonably have found beyond a reasonable doubt that appellant participated in the earlier home invasion. The evidence connecting appellant to that event is simply too thin to support a conviction for that offense. The State's reliance on evidence so general (the crimes involved breaking down a door in a South Austin home, carrying a gun, and stealing a laptop computer) does not lead to a strong enough inference to permit a reasonable jury to conclude that appellant was involved in the earlier home invasion. While a jury could reasonably conclude beyond a reasonable doubt that Charlez was involved in both burglaries, the same cannot be said about appellant. Had trial counsel objected to the State's introduction of this evidence at trial, the trial court would have been required to find it inadmissible and exclude it.

Accordingly, we must consider whether counsel's failure to ensure that this evidence was excluded meets the second prong of the *Strickland* test—that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Here, both errors that have been identified led to the same result: admission of the extraneous offense evidence. In the present case, this second prong would be met if we could conclude that, had the extraneous offense evidence not been admitted, the jury would have assessed a less severe punishment than it did.

16

The court's charge to the jury on punishment included the following instruction:

> You are instructed that if there is testimony before you in this case regarding the defendant having committed other acts or participated in other transactions other than the offense alleged against him in the indictment in this case, that you cannot consider such other acts or transactions, if any, unless you first find and believe beyond a reasonable doubt that the defendant committed such acts or participated in such transactions, if any, but if you do not so believe, or if you have a reasonable doubt thereof, you will not consider such testimony for any purpose.

As we have explained, the extraneous offense should not have been admitted because, based on the evidence presented by the State, no rational juror could have reasonably concluded beyond a reasonable doubt that appellant was connected with the proffered extraneous offense. Thus, if the jurors did in fact consider that offense, they would had been disregarding the court's instruction not to consider other acts or transactions that they did not believe, beyond a reasonable doubt, appellant had committed. On appeal, we generally presume the jury followed the trial court's instructions in the manner presented. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (jury presumed to disregard parole during deliberation when so instructed); *Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) (jury presumed to follow instruction to disregard evidence). The presumption is rebuttable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the court's instruction. *See Colburn*, 966 S.W.2d at 520. Appellant has identified no evidence to rebut that presumption other than the length of the sentence imposed by the jury. The punishment range in this case was 25 to 99 years' imprisonment. The jury assessed punishment at 75 years' imprisonment, a time period appreciably shorter than the maximum available. We conclude that the length of the sentence imposed does not, by itself, rebut

17

the presumption that the jury followed the trial court's instruction and disregarded the extraneous-offense evidence.

Moreover, even in the absence of the instruction, appellant has not, on this record, demonstrated that there is a reasonable probability that, but for the attorney's errors, his sentence would have been less than the 75 years' imprisonment assessed by the jury. *Strickland*, 466 U.S. at 694. Appellant had four previous felony convictions—for robbery, burglary of a vehicle, burglary of a habitation, and felony theft, two of which were sequential convictions. He was therefore sentenced under the habitual-felony-offender provision of the Penal Code. The jury imposed a sentence significantly shorter than the maximum sentence available. We hold that appellant has not met his burden to show that his sentence would have been different if his attorney had objected to admission of the extraneous offense evidence. Consequently, appellant has not satisfied the second prong of the *Strickland* test requiring a showing that counsel's errors were so serious that they undermine our confidence in the outcome of the proceeding. *Id.* Thus, we hold that the failure to request notice under article 37.07 and the failure to object to the evidence when offered were not errors sufficient to require reversal. We overrule appellant's second appellate issue.

***Imposition of Fine***

In this case, the jury found both enhancement paragraphs of the indictment to be "true." Thus, appellant's punishment, enhanced by two prior sequential felony convictions, was assessed pursuant to section 12.42(d) of the Penal Code, the habitual offender punishment provision. *See* Tex. Penal Code § 12.42(d). This subsection does not provide for the imposition of a fine. *Id.*

18

Consequently, the portion of the trial court's judgment in which appellant was assessed a fine was not authorized by law. *See Ex parte Johnson*, 697 S.W.2d 605, 607–08 (Tex. Crim. App. 1985).

Article 37.10 of the Code of Criminal Procedure mandates appellate courts to reform a verdict and judgment containing unauthorized punishment.[3] Tex. Code Crim. Proc. art. 37.10(b); *see Johnson*, 697 S.W.2d at 608 (court of criminal appeals specifically utilized article 37.10(b) to delete fine improperly assessed under enhancement statute). Accordingly, we reform the verdict and modify the judgment of conviction to delete the unauthorized fine assessed in this case. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence."); *see also* Tex. R. App. P. 43.2(b).

### Clerical Error in Judgment

Further, we note that the judgment of conviction in this case contains a clerical error. The appellant's middle name, "Jason," has been omitted from the judgment. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R.

---

[3] Specifically, subsection (b) provides:

If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection.

Tex. Code Crim. Proc. art. 37.10(b).

App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Since the necessary information is available here, we modify the judgment of conviction to correctly reflect appellant's name as "Javiele Jason Frias."

**CONCLUSION**

Having found the evidence sufficient to support the conviction and having rejected appellant's claim of ineffective assistance of counsel, we modify the trial court's judgment of conviction to delete the unauthorized fine assessed and to correctly reflect appellant's name. We affirm the judgment as so modified.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Modified and, as Modified, Affirmed

Filed:   July 10, 2014

Do Not Publish

20